## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WASHINGTON D.C.

| | |
|---|---|
| STEPHEN THALER, an individual,<br><br>     Plaintiff,<br><br>  v.<br><br>SHIRA PERLMUTTER, in her official capacity as Register of Copyrights and Director of the United States Copyright Office; and THE UNITED STATES COPYRIGHT OFFICE,<br><br>     Defendants. | 1:22-CV-01564-BAH |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................. iii

INTRODUCTION.............................................................................................................. 1

I.      RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL
        FACTS ..................................................................................................................... 3

        A.      Facts Defendants do not Dispute........................................................... 3

        B.      Facts Defendants Dispute As In Conflict With the Record................. 3

II.     STANDARD OF REVIEW ..................................................................................... 4

III.    LEGAL STANDARD ............................................................................................. 5

IV.     FACTUAL BACKGROUND.................................................................................. 7

V.      THE COPYRIGHT OFFICE'S ACTION WAS JUSTIFIED...................... 10

        A.      Plaintiff Must Show the Office's Decision was Arbitrary, Capricious, or an
                Abuse of Discretion to Prevail on its APA Claim ............................... 11

        B.      The Office Correctly Refused Plaintiff's Application to Register the Work....... 13

                1.      The History and Language of the Act Supports the Office's Conclusion
                        that Only Human Authorship Qualifies for Copyright Protection........... 13

                2.      Supreme Court Precedent Supports the Office's Decision...................... 14

                3.      Federal Appellate Courts Have Reached the Same Conclusion............. 16

                4.      The Creativity of the Work's Visual Elements is Irrelevant................... 18

                5.      Plaintiff Cannot Supplement the Administrative Record Regarding the
                        Work's Creation ..................................................................................... 19

        C.      Neither Common Law Nor the Work-Made-for-Hire Doctrine are a Basis for
                Plaintiff to Claim Authorship of the Work.......................................... 20

        D.      Plaintiff's Policy Arguments are Irrelevant and Fail to Demonstrate that the
                Office's Decision was Arbitrary and Capricious................................. 24

VI.     PLAINTIFF'S REQUESTED RELIEF IS OUTSIDE THE SCOPE OF THE APA........ 26

CONCLUSION................................................................................................................ 27

## TABLE OF AUTHORITIES

### Cases

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .................................................................. 4

*Ardmore Consulting Group, Inc. v. Contreras-Sweet*,
   118 F. Supp. 3d 388 (D.D.C. 2015) ............................................ 4

*Ashton v. United States Copyright Office*,
   310 F. Supp. 3d 149 (D.D.C. 2018) ............................................ 5

*Atari Games Corp. v. Oman*,
   979 F.2d 242 (D.C. Cir. 1992) ............................................ 26, 27

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53 (1884) ......................................................... passim

*Cetacean Cmty. v. Bush*,
   386 F.3d 1169 (9th Cir. 2004) .................................................. 18

*Citizens Telecoms. Co. of Minn., LLC v. FCC*,
   901 F.3d 991 (8th Cir. 2018) ................................................... 12

*Coach, Inc. v. Peters*,
   386 F. Supp. 2d 495 (S.D.N.Y. 2005) ...................................... 26

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) .......................................................... 22, 23

*Custom Chrome, Inc. v. Ringer*,
   No. Civ. A. 93-2634(GK), 1995 WL 405690 (D.D.C. June 30, 1995) .............. 12

*Esquire, Inc. v. Ringer*,
   591 F.2d 796 (D.C. Cir. 1978) .................................................. 12

*Family Trust of Mass., Inc. v. United States*,
   892 F. Supp. 2d 149 (D.D.C. 2012) ............................................ 4

*Feist Publications v. Rural Telephone Services, Co.*,
   499 U.S. 340 (1991) ............................................................... 6

*Fox Television Station, Inc. v. Filmon X LLC*,
   150 F. Supp. 3d 1 (D.D.C. 2015) ............................................... 4

iii

*Goldstein v. California*,
   412 U.S. 546 (1973) ........................................................................................ 10, 16, 21

*Hagelin v. Fed. Election Comm'n*,
   411 F.3d 237 (D.C. Cir. 2005) ................................................................................... 5

*Harper & Row, Publrs. v. Nation Enters.*,
   471 U.S. 539 (1985) ................................................................................................ 25

*Houghton Mifflin Co. v. Stackpole Sons, Inc.*,
   104 F.2d 306 (2d Cir. 1939) .................................................................................... 21

*Ill. Pub. Telcoms. Ass'n v. FCC*,
   752 F.3d 1018 (D.C. Cir. 2014) ............................................................................... 22

*Kaiser Found. Hosps. v. Sebelius*,
   828 F. Supp. 2d 193 (D.D.C. 2011) .......................................................................... 4

*Kelley v. Chicago Park Dist.*,
   635 F.3d 290 (7th Cir. 2011) ........................................................................ 16, 17, 18

*Mazer v. Stein*,
   347 U.S. 201 (1954) ...................................................................... 10, 16, 20, 25

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ............................................................................................. 4, 11

*Naruto v. Slater*,
   888 F.3d 418 (9th Cir. 2018) ............................................................................ 16, 17

*Norris Indus. v. Int'l Tel. & Tel. Corp.*,
   696 F.2d 918 (11th Cir. 1983) ................................................................................. 12

*Nuvio Corp. v. FCC*,
   473 F.3d 302 (D.C. Cir. 2006) ................................................................................. 11

*OddzOn Prods. v. Oman*,
   924 F.2d 346 (D.C. Cir. 1991) ................................................................................. 20

*Sw. Airlines Co. v. Saxon*,
   142 S. Ct. 1783 (2022) ............................................................................................ 24

*Thaler v. Vidal*,
   43 F.4th 1207 (Fed. Cir. 2022) ......................................................................... 16, 24

*Trade-Mark Cases*,
100 U.S. 82 (1879) ................................................................................ passim

*Urantia Found. v. Kristen Maaherra*,
114 F.3d 955 (9th Cir. 1997) ................................................................ 16, 17

*Varsity Brands, Inc. v. Star Athletica, LLC*,
799 F.3d 468 (6th Cir. 2015) ...................................................................... 12

*Yu Zhang v. Heineken N.V.*,
No. CV 08-06506, 2010 WL 4457460 (C.D. Cal. May 12, 2010) ........................ 6

## Constitutional Provisions and Statutes

5 U.S.C. § 701 ............................................................................................ 10

5 U.S.C. § 704 ............................................................................................ 11

5 U.S.C. § 706 ......................................................................................... 4, 11

17 U.S.C. § 101 ....................................................................................... 5, 22

17 U.S.C. § 102 .................................................................................... passim

17 U.S.C. § 106 ............................................................................................. 5

17 U.S.C. § 201 ..................................................................................... 21, 22

17 U.S.C. § 202 ........................................................................................... 20

17 U.S.C. § 204 ........................................................................................... 21

17 U.S.C. § 302 ........................................................................................... 14

17 U.S.C. § 701 ........................................................................................... 10

Copyright Act of Mar. 4, 1909 ...................................................................... 13

U.S. Const. art. I ......................................................................................... 14

## Rules and Regulations

Fed. R. Civ. P. 56 ....................................................................................... 1, 4

37 C.F.R § 202.5 ......................................................................................... 9, 10

## Secondary Sources

CONTU, FINAL REPORT (1978) ........................................................................ 24

H.R. REP. NO. 94-1476 (1976) .................................................................. 13, 14

James Vincent, *The scary truth about AI copyright is nobody knows what will happen next*,
THE VERGE (Nov. 15, 2022), https://www.theverge.com/23444685/generative-ai-
copyright-infringement-legal-fair-use-training-data ........................................ 25

Letter from Senators Thom Tillis and Chris Coons to Kathi Vidal, Under Secretary of
    Commerce for Intellectual Property and Director of the U.S. Patent and Trademark
    Office, and Shira Perlmutter, Register of Copyrights and Director of the U.S. Copyright
    Office (Oct. 27, 2022), https://www.copyright.gov/laws/hearings/Letter-to-USPTO-
    USCO-on-National-Commission-on-AI-1.pdf ................................................................ 26

PATRY ON COPYRIGHT § 3:19 (2010) ..................................................................... 18

RESTATEMENT (THIRD) OF AGENCY (AM. L. INST. 2006) ...................................................... 23

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT PRACTICES
    (3d. ed. 2021) ................................................................................................. 6, 7, 17, 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WASHINGTON D.C.**

| | |
|---|---|
| STEPHEN THALER, an individual, | 1:22-CV-01564-BAH |
| Plaintiff, | |
| v. | DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT |
| SHIRA PERLMUTTER, in her official capacity as Register of Copyrights and Director of the United States Copyright Office; and THE UNITED STATES COPYRIGHT OFFICE, | |
| Defendants. | |

## INTRODUCTION

Defendants, Shira Perlmutter, in her official capacity as Register of Copyrights and Director of the United States Copyright Office, and the United States Copyright Office, (collectively, the Office or Defendants) pursuant to Fed. R. Civ. P. 56, respectfully request that the Court deny Plaintiff's, Stephen Thaler, an individual, Motion for Summary Judgment, grant its Cross Motion for Summary Judgment, and dismiss Plaintiff's case with prejudice.

This case turns on a single question: Did the Office act reasonably and consistently with the law when it refused to extend copyright protection to a visual work that Plaintiff represented was created without any human involvement? The answer is yes.

The work at issue is a two-dimensional artwork entitled "A Recent Entrance to Paradise" (the Work), as shown below:



In his application, Plaintiff represented that the copyright author was the "Creativity Machine," an artificial intelligence (AI) machine which he alleged had "autonomously" created the Work. Plaintiff also stated that he was the owner of the copyright in the Work because he owned the Creativity Machine or, in the alternative, pursuant to the "work for hire" doctrine.

In rejecting the application, the Office confirmed that copyright protection does not extend to non-human authors. As described herein, the Office's determination was based on the language of the Copyright Act, Supreme Court precedent, and federal court decisions refusing to extend copyright protection to non-human authorship. The Office cited these authorities when it rejected the arguments asserted by Plaintiff, and repeatedly explained the basis for its decision in response to Plaintiff's requests for reconsideration. The Office also correctly rejected Plaintiff's arguments that he is the owner of the Work based on common law or the work made for hire doctrine. The Office's refusal to register the Work is supported by the Administrative Record and was sound, reasoned, and firmly based on the applicable laws. There are no material issues of fact in dispute, and Defendants are entitled to summary judgment.

## I.   RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

In response to Plaintiff's Statement of Undisputed Material Facts, Defendants will respond to each paragraph as numbered in Plaintiff's Summary Judgment Brief.  *See* Dkt. 16 at 2-6.  Even if accepted as true, Plaintiff's facts do not preclude summary judgment in favor of Defendants.

### A.   Facts Defendants do not Dispute

For purposes of this Motion only, Defendants do not dispute the following paragraphs from Plaintiff's Statement of Undisputed Material Facts:  Paragraphs 2, 3, 4, 7, 8, 9, 10, 11, 12, 13, and 14.

### B.   Facts Defendants Dispute As In Conflict With the Record

<u>Plaintiff's Material Fact No. 1</u>:  The first sentence of Paragraph 1 is argumentative and does not state a fact at issue in this case.  Defendants do not dispute the quoted language in the citation parenthetical.

<u>Plaintiff's Material Fact No. 5</u>:  Paragraph 5 is argumentative and does not accurately reflect the record.  Plaintiff's note on the application stated the Work "was autonomously created by a computer algorithm running on a machine call the 'Creativity Machine'.  We are seeking to register this computer-generated work as a work-for-hire to the owner of the Creativity Machine."  Dkt. 13-2 at US_0000001.

<u>Plaintiff's Material Fact No. 6</u>:  The second sentence of Paragraph 6 is argumentative and does not accurately reflect the record.  The Office's August 12, 2019 letter stated "[w]e cannot register this work," Dk. 13-4 at US_0000005, therefore there was no "copyright in the Work" to "address."

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "When evaluating cross-motions for summary judgement, each motion is reviewed 'separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." *Fox Television Station, Inc. v. Filmon X LLC*, 150 F. Supp. 3d 1, 11 (D.D.C. 2015) (quoting *Family Trust of Mass., Inc*. v. *United States*, 892 F. Supp. 2d 149, 154 (D.D.C. 2012)). Review under the Administrative Procedure Act (APA) is limited to a consideration of the administrative record. 5 U.S.C. § 706. And, in the context of an APA challenge to the denial of an application for copyright registration, the standard of review is whether the denial was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* Therefore, the Court must "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Kaiser Found. Hosps.* v. *Sebelius*, 828 F. Supp. 2d 193, 198 (D.D.C. 2011). "This standard of review is 'narrow,' and the court applying it 'is not to substitute its judgment for that of the agency.'" *Ardmore Consulting Group, Inc. v. Contreras-Sweet*, 118 F. Supp. 3d 388, 393 (D.D.C. 2015) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The Supreme Court has held that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43. "Judicial review in APA cases is '[h]ighly deferential' and 'presumes the validity of agency action,' permitting reversal only when 'the agency's decision is not supported by substantial

evidence, or if the agency has made a clear error in judgment.'" *Ashton v. United States Copyright Office*, 310 F. Supp. 3d 149, 156-57 (D.D.C. 2018) (quoting *Hagelin v. Fed. Election Comm'n*, 411 F.3d 237, 242 (D.C. Cir. 2005)).

## III.    LEGAL STANDARD

The Office's decision to refuse registration of the Work was based on established legal standards, including the text of the Copyright Act, judicial interpretation of the Act, and the Office's own public guidance and practices.  The legal inquiry into whether a particular work can be registered begins with the text of the statute.  The Copyright Act of 1976, 17 U.S.C. § 101 et seq., (the Act) grants copyright protection to "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a).  Copyright protection confers certain exclusive rights, including the rights to copy and distribute the work.  *Id.* § 106.  The Act defines categories of works of authorship in which copyright protection can subsist, including "pictorial, graphic, and sculptural works," *id.* § 102(a), which include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings."  *Id.* § 101.  Defendants do not dispute that the Work—a two-dimensional work of visual art—falls within the *categories* of works of authorship identified in the Act.  *See id.*  But that is not the end of the inquiry.  Even if the Work qualifies as a category of work within the scope of the statute, the Act protects only "original works of authorship" that are fixed in a tangible medium of expression.  *Id.* § 102(a).  Accordingly, the Office will refuse registration for works that are not "original works of authorship,"[1] not fixed, or are subject to statutory exclusions.[2]

---

[1] Plaintiff claims that "[i]t is undisputed that the Work constitutes a fixed, visual artwork that would be protected under the Act had it been created through traditional human labor," Dkt.

The Office's decision also relied on its many years of experience interpreting and applying copyright law.  It collects this understanding of the law and provides standards for examining and registering works in its *Compendium of U.S. Copyright Office Practices (Third Edition)* (*Compendium*).  Updates to the *Compendium* are typically adopted following a period for public notice and comment.  *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT PRACTICES, Introduction at 7 (3d. ed. 2021) (COMPENDIUM (THIRD)) (referencing welcoming public input on the *Compendium* during "formal notice and commenting periods").  The Office looks to the *Compendium* when reviewing copyright registration applications, including with regard to the requirements for copyrightability.  As other courts have recognized, registration decisions that have been based on "the Copyright Act, the content of related regulations, and the *Compendium* . . . can hardly be deemed to be 'arbitrary and capricious'" and such reasonable determinations "must be accorded substantial deference."  *Yu Zhang v. Heineken N.V.*, No. CV 08-06506, 2010 WL 4457460, at *6 (C.D. Cal. May 12, 2010) (citation omitted).

The *Compendium* contains several sections addressing the human authorship requirement.  The *Compendium* specifies "the Office will refuse to register a claim if it determines that a human being did not create the work."  COMPENDIUM (THIRD) § 306.  Likewise, the *Compendium* provides that copyright law only protects "the fruits of intellectual

---

16 at 7, but the Office did not consider whether other registration requirements, including that the work must be "original," were met.  The term "original" means that the work was independently created by the author, as opposed to copied from other works.  *See Feist Publications v. Rural Telephone Services, Co.*, 499 U.S. 340 (1991).  Because Plaintiff provided minimal information as to how the Work was prepared, the Office is unable to determine whether the Work meets this standard because, among other potentially relevant facts, the Office does not know what preexisting works the Creativity Machine was trained on.

[2] The Act excludes copyright protection for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b).

labor" that "are founded in the creative powers of the [human] mind." *Id.* (quoting *Trade-Mark Cases*, 100 U.S. 82, 94 (1879)). Similarly, the *Compendium* points out that "to qualify as a work of 'authorship' a work must be created by a human being" and "works that do not satisfy this requirement are not copyrightable." *Id.* § 313.2. The *Compendium* provides numerous examples of works that lack the human authorship requirement necessary for copyrightability including "works produced by nature, animals, or plants." *Id.* Most notably, the *Compendium* specifies that the Office "will not register works produced by a machine or mere mechanical process that operates randomly or automatically without any creative input or intervention from a human author." *Id.*

## IV.    FACTUAL BACKGROUND

Plaintiff applied to register the Work on November 3, 2018. *See* Dkt. 13-2. When Plaintiff submitted his application, he included a note for the Office that stated "[p]lease note this artwork was autonomously created by a computer algorithm running on a machine called the 'Creativity Machine'. We are seeking to register this computer-generated work as a work-for-hire to the owner of the Creativity Machine." *Id.* at US_0000001. Plaintiff further filled in the "Author" field of the application as "Creativity Machine" and stated that the work created by the author was a "2-D artwork, Created [sic] autonomously by machine." *Id.* at US_0000002. Plaintiff also checked a box that the work was a "work made for hire," claiming ownership was transferred due to "[o]wnership of the machine." *Id.*

On August 12, 2019, the copyright examiner assigned to the application refused registration. *See* Dkt. 13-4. The examiner's decision explained that the Work "lacks the human authorship necessary to support a copyright claim" and pointed to Plaintiff's statement in the application that the work was "created autonomously by machine." *Id.* at US_0000005 (quoting

Dkt. 13-2 at US_0000002).  The decision also pointed to previous Supreme Court opinions

stating that copyright protects only "the fruits of intellectual labor" that "are founded in the

creative powers of the mind" and is limited to "original intellectual conceptions of the author."

Dkt 13-4 at US_0000005 (quoting *Trade-Mark Cases*, 100 U.S. at 94; *Burrow-Giles*

*Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884)).

Plaintiff appealed the initial refusal of registration on September 23, 2019[3].  *See* Dkt. 13-

5.  Plaintiff's request for reconsideration opened by acknowledging that "[i]t is correct that the

present submission lacks traditional human authorship—it was autonomously generated by an

AI."  *Id.* at US_0000009.[4]  Plaintiff's request for reconsideration was largely based on policy

arguments in support of registration, including the argument that the Office "should register

copyrights for [machine-generated works] because doing so would further the underlying goals

of copyright law, including the constitutional rationale for copyright protection, and because

there is no binding authority that prohibits" registration.  *Id.* at US_0000010; *see also id.* at

US_0000013 (under heading "Policy Objections," arguing that the human authorship

requirement "strongly discourages the use and development of creative AI").  Plaintiff also

argued without analysis that because "non-human, artificial persons such as companies can

already be authors" under the work made for hire doctrine, that provided "precedent" for

permitting him to register the Work.  *Id.* at US_0000012.  Finally, Plaintiff criticized the Office's

---

[3] The top of Plaintiff's first request for reconsideration is dated September 8, 2019, but
the attorney's signature block has a date of September 23, 2019.  *Compare* Dkt. 13-5 at
US_0000009 *with* Dkt. 13-5 at US_0000016.

[4] At no point in Plaintiff's copyright application or his two requests for reconsideration
did he suggest that he had any involvement in or direction of the specific expressive content of
the Work.  *See generally* Dkt. 13-5; Dkt. 13-7.  For that reason, there is no evidence in the
Administrative Record that, as Plaintiff now argues, he "provided instructions and directed his
AI to create the Work."  Dkt. 16 at 25.

reliance on the Supreme Court's opinions in the *Trade-Mark Cases* and *Sarony*, describing them as "non-binding judicial opinions from the Gilded Age" that did not foreclose protection for machine-generated works. *Id.* at US_0000015.

The Office denied Plaintiff's request for reconsideration on March 30, 2020. *See* Dkt. 13-6. In a letter, the Office of Registration Policy & Practice again explained that the *Trade-Mark Cases* and *Sarony* limited copyright law to protecting only the creations of human authors. *Id.* at US_0000019. The Office further noted that Plaintiff explicitly admitted the work was "autonomously generated by an AI" and had "provided no evidence on sufficient creative input or intervention by a human author in the Work." *Id.* Finally, it found the policy arguments were "insufficient to convince the Office to abandon its longstanding interpretation of the Copyright Act, Supreme Court, and lower court judicial precedent that a work meets the legal and formal requirements of copyright protection only if it is created by a human author." *Id.* at US_0000019-20.

Plaintiff appealed[5] this decision to the Copyright Office Review Board, a body that provides final review of registration refusals and whose three members are appointed by the Register of Copyrights and the Office's General Counsel. *See* 37 C.F.R. § 202.5(c), (f), (g). Because Plaintiff did "not assert that the Work was created with contribution from a human author," the "only issue before the Board" was whether the Office's refusal to register non-human works violated the law. Dkt. 13-8 at US_0000033. After considering the statute and relevant law, the Board found that the Office correctly interpreted copyright law to require human authorship. *Id.*

---

[5] Plaintiff's May 27, 2020 second request for reconsideration was largely identical to his previous request, so it is not described further. *Compare* Dkt. 13-7 *with* Dkt. 13-5.

The Board's decision rested on several grounds.  First, it found that the Supreme Court had repeatedly interpreted the copyright term "author" as a human whose mind originated a work.  *See id.* at US_0000034 (discussing *Sarony*, *Mazer v. Stein*, and *Goldstein v. California*).  Second, the Board noted that federal appellate courts have refused to extend copyright protection to non-human authors, including animals and divine spirits.  *Id.* at US_0000034-35.  Third, the Board pointed to the final report by the National Commission on New Technological Uses of Copyrighted Works, which Congress tasked with considering copyright questions raised by computer technology.  *Id.* at US_0000035.  That report agreed with the Office's past and present view that copyright requires "at least minimal human creative effort."  *Id.*  Fourth, the Board noted that for almost 40 years the Office's registration practices required human authorship.  *Id.*[6] Fifth, the Board found the work made for hire doctrine inapplicable because: (1) it does not affect whether a work is within the scope of copyright; and (2) the Work did not meet the statutory requirements that the work be prepared either by an "employee" or pursuant to "a written instrument."  *Id.* at US_0000036

The Board's decision to affirm refusal of registration constituted a "final agency action" by the Office with respect to the issues addressed therein, 37 C.F.R. § 202.5(g), and is subject to review by a federal district court under the APA.  *See* 17 U.S.C. § 701(e) ("[A]ctions taken by the Register of Copyrights under this title are subject to the provisions of the Administrative Procedure Act . . . ."); *see also* 5 U.S.C. § 704 ("Agency action made reviewable by statute . . . [is] subject to judicial review.").

## V.      THE COPYRIGHT OFFICE'S ACTION WAS JUSTIFIED

---

[6] The Board also pointed to a recent study by the U.S. Patent and Trademark Office, which found a similar consensus among practitioners.  *See* Dkt. 13-8 at US_0000036.

10

### A.    Plaintiff Must Show the Office's Decision was Arbitrary, Capricious, or an Abuse of Discretion to Prevail on its APA Claim

As Plaintiff acknowledges, the Office's refusal to register the Work is governed by the APA.  *See* Dkt. 16 at 6.  In setting the scope of judicial review, the APA provides that courts may "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706.  As discussed above, the Supreme Court has held that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *State Farm*, 463 U.S. at 43 (citation omitted).  A "satisfactory explanation" is one from which "the agency's [decision] path may reasonably be discerned," and does not require express or detailed analysis of every argument raised.  *Id.*  The burden is on the party challenging an agency's decision under the APA.  *See Nuvio Corp. v. FCC*, 473 F.3d 302, 305 (D.C. Cir. 2006) (noting that, under the APA, it is "petitioners' burden" to show that an action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law") (quoting 5 U.S.C. § 706(2)(A)).

Plaintiff has failed to meet his burden here.  The refusal to register the Work was neither arbitrary, capricious, nor an abuse of discretion.  The Office credited Plaintiff's representation of the Work as created "autonomously" by a machine and applied longstanding legal criteria to conclude it must deny Plaintiff's registration application.  The Office considered and rejected the arguments asserted by Plaintiff, and it explained clearly how it applied the law to Plaintiff's application.  In particular, the Review Board's February 14, 2022 decision provided a satisfactory explanation and rational basis for the decision to refuse registration of the Work.  *See* Dkt. 13-8 at US_0000037 ("Because copyright law as codified in the 1976 Act requires human authorship, the Work cannot be registered.").

Further, contrary to Plaintiff's assertion, *see* Dkt. 16 at 15-16, the Court should give substantial deference to the Office's judgment regarding copyrightability in recognition of the Office's extensive expertise. *See Esquire, Inc. v. Ringer*, 591 F.2d 796, 801–02 (D.C. Cir. 1978) (giving "considerable weight" to the Register's refusal determination); *Custom Chrome, Inc. v. Ringer*, No. Civ. A. 93-2634(GK), 1995 WL 405690, at *4 (D.D.C. June 30, 1995) (according "great weight" to the Register's registration decision). Plaintiff alleges that the Office's decision is not entitled to deference because the human authorship requirement is not based on a formal regulation. *See* Dkt. 16 at 15-16. However, the Office was created to oversee copyright registration and "has been concerned with the distinction between copyrightable and noncopyrightable works of art since the Copyright Act of 1870 characterized copyrightable subject matter as works of fine art." *Norris Indus. v. Int'l Tel. & Tel. Corp.*, 696 F.2d 918, 922 (11th Cir. 1983). For this reason, courts credit the Office's expertise in interpreting the Act, particularly in the context of registration. *See, e.g., Esquire, Inc.*, 591 F.2d at 801; *Varsity Brands, Inc. v. Star Athletica, LLC*, 799 F.3d 468, 480 (6th Cir. 2015) ("the Copyright Office's expertise in identifying and thinking about the difference between art and function surpasses ours"), *aff'd on other grounds* 580 U.S. 405 (2017).

Plaintiff's disagreement with the Office's conclusion does not establish an abuse of discretion, nor does it indicate that the Office acted arbitrarily or capriciously. *See, e.g., Citizens Telecoms. Co. of Minn., LLC v. FCC*, 901 F.3d 991, 1010 (8th Cir. 2018) (noting that a plaintiff's "disagreement is no basis for finding" a federal agency's interpretation to be "arbitrary and capricious"). The Office's conclusion that copyright law does not protect non-human creators was a sound and reasoned interpretation of the applicable law.

**B.**     **The Office Correctly Refused Plaintiff's Application to Register the Work**

**1.**     **The History and Language of the Act Supports the Office's Conclusion that Only Human Authorship Qualifies for Copyright Protection**

Contrary to Plaintiff's argument, there is no support in the Act for his assertion that copyright extends to works created solely by machines. For example, Plaintiff is mistaken that because the statutory phrase "works of authorship" is undefined, the Act permits AI-generated works to be registered. *See* Dkt. 16 at 7-9. Rather, the human authorship requirement is a longstanding requirement of copyright law. The 1909 Copyright Act explicitly provided that only a "person" could "secure copyright for his work." Act of Mar. 4, 1909, c. 320, §§ 9, 10, 35 Stat. 1075, 1077. In enacting the 1976 Act, Congress did not intend to change the standards for copyright authorship. *See* H.R. REP. NO. 94-1476, at 51 (1976) (noting that Congress intended to incorporate the "original work of authorship" standard under the 1909 Act).

Plaintiff misconstrues other provisions of the Act when citing them in support of his position. *See* Dkt. 16 at 7-9. He claims that the Act "explicitly accommodates non-human authors" by allowing copyright registration for anonymous works, pseudonymous works, or works made for hire. *Id.* at 8 n.3, n.4. The opposite is true; the Act assumes that authors are human. But Congress created "special provisions" to address those circumstances where a work's term cannot be computed by using an author's life because the human author is not identified. *See* H.R. REP. NO. 94-1476, at 137. For anonymous and pseudonymous works,[7] the Act addresses these types of works by providing a fixed length of protection. *See* 17 U.S.C. § 302(a)–(c). However, if the author's identity is revealed in the registration record before the

---

[7] Plaintiff's arguments regarding works made for hire are addressed separately below in Section V.C.

term expires, the copyright term is measured from the human author's death. *Id*. Nothing about Congress's treatment of the term of protection for anonymous and pseudonymous works supports Plaintiff's argument that Congress intended the Act to protect non-human creations.

### 2.   Supreme Court Precedent Supports the Office's Decision

The Office was correct to rely on the Supreme Court's decision in *Burrow-Giles Lithographic Co. v. Sarony*, which held that photographs could be protected because they contained sufficient human creativity to qualify as "works of authorship." Dkt. 13-8 at US_0000034. The case arose after Congress had amended the relevant copyright statute to include photographs, and the defendant had infringed a copyright in a photograph of Oscar Wilde. *See Sarony*, 111 U.S. at 54–55. The defendant challenged the constitutionality of the law, arguing that Congress may only protect the "writings" of "authors," under U.S. Const. art. I, § 8, cl. 8, and that photographs were ineligible because "a photograph is not a writing nor the production of an author" because they are created by the camera. *Id*. at 56 (defendant argued that photographs were merely "reproduction on paper of the exact features of some natural object or of some person"). The Supreme Court disagreed, finding that the term "writings" in the Copyright Clause broadly means "the literary productions of those authors," and "Congress very properly has declared these to include all forms of writing, printing, engraving, etching, etc., by which the ideas in the mind of the author are given visible expression." *Id*. at 58.

The Court held that photographs were copyrightable creation of "authors" because they reflected creative choices by humans. *Id*. at 57–59. The then-copyright statute protected the creation of "authors" and the Court construed an "author" as "he to whom anything owes its origin; originator; maker; one who completes a work of science or literature" and found that photographs were protected by copyright as "representatives of original intellectual conceptions

of [an] author." *Id.* In its opinion, the Court emphasized the photographer had a "mental conception" of the photograph, given form by decisions such as "posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression, and from such disposition, arrangement, or representation" creating the image. *Id.* at 60.[8] Human creativity was essential: had the photograph been a "mere mechanical reproduction" that "involve[d] no originality of thought or any novelty in the intellectual operation," then "copyright [would offer] no protection." *Id.* at 59.

Contrary to Plaintiff's argument, nothing in *Sarony* requires registration of the Work at issue in this case. Unlike the Work here, which Plaintiff claims was created "autonomously," Dkt. 13-2 at US_0000001, the human photographer in *Sarony* made creative choices such as how he arranged the subject and altered the lighting of the scene. *See* 111 U.S. at 60. The Court's ruling in *Sarony* was not based on a free-flowing policy exercise untethered from the statute as Plaintiff's desired result would demand in this case. Rather, copyright law at the time "name[d] photographs among other things for which the author, inventor, or designer may obtain copyright." *Id.* at 55; *contra* Dkt. 16 at 13 (suggesting that *Sarony* construed statutory text that "preceded the invention of photography"). As the Court in *Sarony* noted, absent human authorship, the photograph would not be entitled to copyright protection. *See* 111 U.S. at 60.

---

[8] This echoed the Court's decision five years earlier in *Trade-Mark Cases*, which noted that "the writings which are to be protected [under the Copyright Clause] are the fruits of intellectual labor, embodied in the form of books, prints, engravings and the like." 100 U.S. at 94.

The Supreme Court's later cases have similarly articulated a nexus between human expression and copyright.  In *Mazer v. Stein*, the Court cited *Sarony* for the proposition that a work "must be original, that is, the author's tangible expression of his ideas."  347 U.S. 201, 214 (1954).  And in *Goldstein v. California*, the Court again cited *Sarony* for the proposition that "[w]hile an 'author' may be viewed as an individual who writes an original composition, the term in its constitutional sense, has been construed to mean an 'originator,' 'he to whom anything owes its origin.'"  412 U.S. 546, 561 (1973).

### 3.    Federal Appellate Courts Have Reached the Same Conclusion

Plaintiff is not the first to attempt to extend copyright protection to non-humans.  In earlier cases, including *Urantia Found. v. Kristen Maaherra*, *Naruto v. Slater*, and *Kelley v. Chicago Park Dist.*, appellate courts have rebuffed would-be non-human authors.[9]  And the Board's decision explained its reliance on these cases.  *See* Dkt. 13-8 at US_0000034–35 (explaining that "lower courts have repeatedly rejected attempts to extend copyright protection to non-human creations" and citing relevant cases); *Urantia Found. v. Kristen Maaherra*, 114 F.3d 955, 957–59 (9th Cir. 1997) (holding that "some element of human creativity must have occurred in order for the Book to be copyrightable" because "it is not creations of divine beings that the copyright laws were intended to protect"); *Naruto v. Slater*, 888 F.3d 418, 426 (9th Cir. 2018) (reasoning that a monkey cannot register a copyright in photos it captures with a camera because the Act refers to an author's "children," "widow," "grandchildren," and "widower," — terms that "all imply humanity and necessarily exclude animals") (decided on other grounds); *Kelley v.*

---

[9] Courts examining this question under United States patent law have reached a similar conclusion.  The Federal Circuit recently rejected an attempt by Plaintiff to patent an invention by a machine.  *See Thaler v. Vidal*, 43 F.4th 1207, 1210 (Fed. Cir. 2022) ("there is no ambiguity: the Patent Act requires that inventors must be natural persons; that is, human beings").

*Chicago Park Dist.*, 635 F.3d 290, 304 (7th Cir. 2011) (observing that "authorship is an entirely

human endeavor") (internal citations omitted).[10]

Plaintiff's attempt to re-write the holdings of these cases is unpersuasive.  *See* Dkt. 16 at

19.  *Urantia Found.* is not a case limited to works "authored in part by a spirit."  Rather, the

"threshold issue" of that case was whether a work "claimed to embody the words of celestial

beings *rather than human beings*, is copyrightable at all."  *Urantia Found.*, 114 F.3d at 958

(emphasis added).  Addressing the argument that copyright requires "the requisite ingredient of

human creativity," the court held that "in this case some element of human creativity must have

occurred in order for the Book to be copyrightable."  *Id.*  While Plaintiff suggests that the

"worldly" nature of the Creativity Machine is sufficient for copyright protection, Dkt. 16 at 19,

the record in this case lacks evidence that Work was the result of "human" creativity, Dkt. 13-8

at US_0000033.

Similarly, *Naruto* is not merely an "animal art" case.  Dkt. 16 at 19.  In that case, the

Ninth Circuit considered a complaint alleging that a monkey was "the author and owner of"

photographs and had a right to sue under the Copyright Act.  *Naruto*, 888 F.3d at 426.  As

Plaintiff concedes, the court answered in the negative because "animals other than humans"

cannot sue under the Act.  *Id.* at 426.  The court also noted that "if Congress and the President

intended to take the extraordinary step of authorizing animals" to sue, the statute would need to

state so clearly.  *Id.* at 425 (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1179 (9th Cir.

---

[10] These judicial decisions are reflected in the Office's guidance in its *Compendium*,
which requires that copyrighted works be created by a human and provides examples of
unregistrable works such as "a photograph taken by a monkey" and "an application for a song
naming the Holy Spirit as the author."  COMPENDIUM (THIRD) § 313.2.  Similarly, the
*Compendium* incorporates the holdings in cases such as *Trade-Mark Cases* and *Sarony*, which
require human authorship as a condition for copyright protection.  *See, e.g.*, *id.* §§ 306, 313.2.

2004)).  Copyright protection for works created entirely by machines would be even more
extraordinary.

Finally, Plaintiff's Motion omits *Kelley*, a case cited by the Office.  *See* Dkt. 13-8 at
US_0000035.  In *Kelley,* the Seventh Circuit held that a "living garden" was not copyrightable,
in part, because "works owing their form to the forces of nature cannot be copyrighted."  635
F.3d at 304.  The Seventh Circuit cited the Office and explained that because "authorship is an
entirely human endeavor," "[a]uthors of copyrightable works must be human."  *Id.* at 304 (citing
COMPENDIUM (SECOND) §§ 202.02(b), 503.03(a) and PATRY ON COPYRIGHT § 3:19 (2010)).
Even though the garden in *Kelley* was the product of some human involvement, it was "not the
kind of authorship required for copyright."  635 F.3d at 304.  Rather, the constituent elements of
the garden "originate[d] in nature, not in the mind of the [human] gardener."  *Id*.  The same is
true here—the Work's visual elements are not the product of human endeavor but were instead
"autonomously created by a computer algorithm."  Dkt. 13-2 at US_0000001.

### 4.    The Creativity of the Work's Visual Elements is Irrelevant

Plaintiff accurately states that the scope of "works" covered by the Act reflects a
deliberate choice by Congress regarding the scope of copyrightable material, including what
works are "work[s] of authorship," 17 U.S.C. § 102(a).  Dkt. 16 at 7-9.  However, Plaintiff's
claim that the Work is "adequately creative" because it "contains visual elements in a novel
way" misses the point.  *Id*. at 9.  The question of the category of the Work or its creativity is not
the inquiry on which the Office based its refusal decision.  *See* Dkt. 13-8.  Section 102 protects
"original works of authorship fixed in any tangible medium of expression."  17 U.S.C. § 102(a).
Creativity and originality are required, but not sufficient for protection; it is only the creativity
and originality of "authors"—humans—that are eligible for copyright.  In this case, the

arrangement of visual elements in the Work is not determinative.  Rather, the Work's defect is that its "author" is not human and, therefore, it cannot be a "work of authorship" under § 102(a).

### 5. Plaintiff Cannot Supplement the Administrative Record Regarding the Work's Creation

The Court should not credit Plaintiff's statement, made for the first time in his Motion, that he "provided instructions and directed his AI to create the Work," that "the AI is entirely controlled by Dr. Thaler," or that "the AI only operates at Dr. Thaler's direction."  Dkt. 16 at 25–26.  These unsubstantiated allegations were not part of the Administrative Record before the Copyright Office.[11]  The Office was entitled to rely on Plaintiff's contemporaneous statements and "accept[] as a threshold matter Thaler's representation that the Work was autonomously created by artificial intelligence without any creative contribution from a human actor."  Dkt. 13-8 at US_0000032.  In any event, even if Plaintiff "created an AI that he directed to create artwork," Dkt. 16 at 1, that does not mean that he directed the specific contents of any work, which is what copyright protection requires.

---

[11] Plaintiff is incorrect in stating that the Office "could have informed him that he should list himself as the author of the Work."  Dkt. 16 at 25.  The Office refused the Work because Plaintiff did not "author" any part of the Work.  As he made clear, the Work was created "autonomously by machine."  Dkt. 16 at 3 (quoting Dkt. 13-2 at US_0000001).  The application's defect was substantive, not clerical.

### C.     Neither Common Law Nor the Work-Made-for-Hire Doctrine are a Basis for Plaintiff to Claim Authorship of the Work

Plaintiff is also incorrect that common law or the work made for hire doctrine permits him to claim a copyright interest in the Work.[12] *See* Dkt. 16 at 20-26.  As explained above, copyright does not protect the creations of non-human authors therefore there is no interest to be claimed.  No copyright in the Work exists and therefore Plaintiff's common law property and work made for hire arguments do not alter the Office's conclusion.  However, for completeness, Defendants will address each argument.

As an initial matter, Plaintiff's reliance on common law regarding property ownership is irrelevant because they involve physical rather than intangible property.[13] *See* Dkt. 16 at 21-24. It is a fundamental principle of intellectual property, confirmed in the Act, that ownership of a material object is distinct from ownership of intangible rights embodied in that object.  *See* 17 U.S.C. § 202 ("Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied.  Transfer of ownership of any material object, including the copy or phonorecord in which the work is first

---

[12] At the outset, the Court should reject Plaintiff's invocation of common law property principles as a basis for overturning the Office's decision.  Plaintiff did not cite these cases during the registration process, so the Office's decision did not have the opportunity to consider them.  *See OddzOn Prods. v. Oman*, 924 F.2d 346, 350 (D.C. Cir. 1991) (because copyright registration argument "was not raised in the application proceedings, that question is not appropriately before us for review").

[13] Plaintiff relies heavily on a proclamation from the King of Ireland in the 6th Century and state court cases establishing physical property principles.  *See* Dkt. 16 at 21-22.  Given that Plaintiff has described the Supreme Court's decisions in *Sarony* and *Mazer* as "non-binding judicial opinions from the Gilded Age," Dkt. 13-7 at US_0000029, decisions by state courts and foreign monarchs should be afforded no greater weight.  *See also* Dkt. 16 at 15 (criticizing the Office for "relying on gilded age discussions of quasi-metaphysical creative sparks and dicta").

fixed, does not of itself convey any rights in the copyrighted work embodied in the object.").[14]

Plaintiff's invitation to apply physical property doctrines such as accession and first possession

to copyright would contravene the statutory scheme and upend the foundations of copyright

law.[15]

      Moreover, Plaintiff's common law argument fails because it is foreclosed by the text and

structure of the Act.  Plaintiff suggests that because the Act references "operation of law," that

language permits common law principles to determine what material is protected by copyright.

Dkt. 16 at 20.  But "operation of law" is only mentioned as relevant for transfers of an existing

copyright—not for whether a copyright exists in the first place.  *See* 17 U.S.C. § 201(d)

("ownership of a copyright may be transferred in whole or in part by any means of conveyance

or by operation of law"); *id.* § 204(a) (copyright transfers must be in writing unless transfer is

"by operation of law").  Section 102(a), the subject matter of copyright, and § 201(a), which

provides that copyright "vests initially in the author or authors of the work," do not reference

"operations of law."  And, because Congress deliberately used "operations of law" elsewhere in

the Act, its omission in the Act's discussion of the subject matter of copyright and initial creation

---

[14] Plaintiff's citation to *Houghton Mifflin Co. v. Stackpole Sons, Inc.* is inapposite. *See* Dkt. 16 at 23-24.  In *Houghton Mifflin Co.*, the parties disagreed whether Adolf Hitler's *Mein Kampf* was protected by copyright, with an alleged infringer arguing that the plaintiff lacked standing due to defects in a "carefully drawn document intended to transfer all American rights to publish and sell this work."  104 F.2d 306, 310 (2d Cir. 1939).  The court held only that "*if* an analogy is to be drawn between literary property and ordinary chattels," the fact that the publisher owned the manuscript provided circumstantial evidence the copyright had been transferred as well.  *Id.* at 311 (emphasis added).  Unlike here, there was no dispute concerning human authorship.

[15] Moreover, to the extent that state property law conflicts with the Act, it is preempted by the Supremacy Clause. *See Goldstein*, 412 U.S. at 561 (looking at "federal copyright law" to determine whether the state law at issue "st[ood] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

should be treated as intentional and foreclose property common law determining those issues. *See, e.g., Ill. Pub. Telcoms. Ass'n v. FCC*, 752 F.3d 1018, 1023 (D.C. Cir. 2014) ("we will not read into the statute a mandatory provision that Congress declined to supply").

Plaintiff's argument that he is the owner of the Work because it is a work made for hire also fails. *See* Dkt. 16 at 24-26. The Act sets clear guidance regarding works made for hire. It states that "the employer or other person for whom the work was prepared is *considered* the author for purposes of this title . . . ." 17 U.S.C. § 201(b) (emphasis added). The Act defines a "work made for hire" as either (1) a work "prepared by an *employee* within the scope of *his or her* employment" or (2) a qualifying work "specially ordered or commissioned" by one or more parties, "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.* § 101 (definition of "work made for hire") (emphasis added).[16] Congress's use of personal pronouns to refer to the employee's relationship with the employer indicates that Congress intended such employees to be human, not machines.[17] The "Creativity Machine" is not a person, is not Plaintiff's employee, and is not Plaintiff's agent. The work made for hire doctrine does not apply here.

Further, Plaintiff cannot avoid this statutory language by appealing to the Supreme Court's decision in *Community for Creative Non-Violence* (*CCNV*) *v. Reid*, 490 U.S. 730 (1989). *See* Dkt. 16 at 26. Plaintiff recites the factors the Court considered but ignores that the Court's

---

[16] Plaintiff does not claim that the Work satisfies the terms of the second clause in the work made for hire definition (relating to "specially ordered or commissioned" works). Therefore, any argument that the Work was specially ordered or commissioned has been waived.

[17] Plaintiff's argument that computers can be employees for copyright purposes is extraordinary and could have broad implications for employment and tax law. The Court should not construe the term "employee" in a way that would disrupt other established areas of law, such as including inanimate machines in the definition of "employee."

treatment of the work made for hire doctrine assumed that the employee in question is a human. *See CCNV*, 490 U.S. at 751-52. The factors the Court provided in *CCNV* for evaluating whether an agent is an employee include "the provision of employee benefits" and "the tax treatment of the hired party." *Id.* A machine cannot satisfy these elements: it neither receives benefits nor pays taxes.

Moreover, *CCNV's* importation of the common-law agency doctrine into the Act's "employee" determination required a human. In *CCNV*, the Court explained that Congress "intended to describe the conventional master-servant relationship as understood by common-law agency doctrine" in referencing employees. *CCNV*, 490 U.S. at 739–40.[18] And it is clear that agents must be human: "agency" describes "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another *person* (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." RESTATEMENT (THIRD) OF AGENCY § 1.01 (emphasis added). Because the Creativity Machine cannot be an agent, it correspondingly cannot be an employee under the work made for hire doctrine.[19]

---

[18] The Restatement of Agency no longer uses the "master-servant" terminology; in its place it uses the phrase "respondeat superior." RESTATEMENT (THIRD) OF AGENCY § 2.04 (AM. L. INST. 2006).

[19] Plaintiff's semantic argument that he is the Creativity Machine's employer under the Act because he "make[s] use of," *i.e.*, "employs" the machine, Dkt. 16 at 25–26, is unjustifiable under the statute. Further, this reasoning would allow any human author's inanimate tool to qualify as an employee—including a pencil, piano, or camera—as one can "make use of" those implements when creating a work.

### D.   Plaintiff's Policy Arguments are Irrelevant and Fail to Demonstrate that the Office's Decision was Arbitrary and Capricious

Much of Plaintiff's Motion is devoted to policy arguments in favor of copyright protection for AI created works.  But policy arguments do not demonstrate that the Office's decision was arbitrary and capricious under current law.  Rather, these arguments simply show that Plaintiff disagrees with the Office's decision.[20]  As the Federal Circuit stated in response to these same policy arguments raised in *Thaler v. Vidal*, "Thaler's policy arguments are speculative and lack a basis in the text of the Patent Act and in the record.  In any event, the text before us is unambiguous, and we may not 'elevate vague invocations of statutory purpose over the words Congress chose.'" 43 F.4th at 1213 (quoting *Sw. Airlines Co. v. Saxon*, 142 S. Ct. 1783, 1792-93 (2022)).

Here, Plaintiff's policy arguments do not support his claim that Defendants violated the APA.  Instead, Plaintiff's arguments merely state his own view that the human-authorship requirement "frustrates the purpose of the [Copyright] Act which is to promote the dissemination and creation of work."  Dkt. 16 at 1.  And Plaintiff made similar arguments to the Office during the registration process.  *See* Dkt. 13-5; Dkt. 13-7.  Plaintiff claimed that because copyright serves as "a financial incentive to generate expressive works," copyright for machine-generated works would provide economic incentives for developing "creative AIs" capable of generating

---

[20] For example, Plaintiff criticizes the Office's reference to the National Commission on New Technological Uses of Copyrighted Works ("CONTU") Report by claiming that the Office "ignores that CONTU did not seriously consider the possibility of AI-Generated Works as they were considered 'too speculative' at the time." Dkt. 16 at 21 (citation omitted).  But the Office relied on the CONTU Report to support its understanding that "the existing judicial construction of 'original work[s] of Authorship' . . . require[s] human authorship." Dkt. 13-8 at US_0000035 (citing CONTU, FINAL REPORT at 1 (1978) (emphasis added)).  While Plaintiff disagrees, as a policy matter, with what the law should be, the CONTU Report itself observes that Congress would be responsible for any change to the copyright laws.  CONTU, FINAL REPORT at 44–46.

new expressive material.  Dkt. 13-7 at US_0000024–25; *see also id.* at US_0000024 (arguing that "[b]oth the U.S. Constitution and principles of good public policy require that the Office permit 'AI-generated works' or 'computer-generated works' (CGWs) to receive copyright protection").

Regardless of Plaintiff's own views, the Constitutional purpose of copyright is to incentivize *humans* to create expressive works.  "[T]he Framers intended copyright itself to be the engine of free expression," by "suppl[ying] the economic incentive to create and disseminate ideas."  *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539, 558 (1985).  Unlike humans, machines do not have rights of free expression, and do not need economic incentives to create and disseminate expressive content.  *Cf.* Dkt. 13-7 at US_0000025 (Plaintiff's admission that "machines do not have legal personality").  For this reason, the Supreme Court has described copyright as "advanc[ing] public welfare," by rewarding "[s]acrificial days devoted to such creative activities."  *Mazer*, 347 U.S. at 219.  But machines built to generate works autonomously—like the Creativity Machine—do not "sacrifice" time.  A machine functions as designed without motivation or reward.[21]

In any event, this is not the forum to resolve Plaintiff's policy arguments.  The rapid development of AI technology, particularly systems capable of generating expressive material, raises many questions about its interplay with copyright law.  *See, e.g.*, James Vincent, *The scary truth about AI copyright is nobody knows what will happen next*, THE VERGE (Nov. 15, 2022), https://www.theverge.com/23444685/generative-ai-copyright-infringement-legal-fair-use-

---

[21] As the Office's decision noted, the Supreme Court's construction of the Copyright Clause suggested that the Constitution itself limits copyright protection to only creations of "authors," *i.e.*, humans.  *See* Dkt. 13-8 at US_0000034 n.6 (citing *Sarony*, 111 U.S. at 56 (describing beneficiaries of the Constitution's intellectual property clause as "authors," who are, along with inventors, one of "two classes" of "persons")).

training-data (discussing the "key questions from which the topic's many uncertainties unfold").

The Office will be addressing these issues in the coming year.  Among other things, it is

preparing registration guidance for works generated by using AI, planning public events to

discuss emerging issues, and taking steps to issue a notice of inquiry on complex questions

involving copyright and AI.[22]  The Office's AI initiatives will consider the broader policy

questions surrounding AI, and Plaintiff is welcome to participate in that work.  But the Court

here is limited to applying the law as it exists now, not as Plaintiff might wish it to be.  Plaintiff's

policy arguments cannot be the basis for finding the Office's decision arbitrary or capricious or

contrary to law.

## VI.    PLAINTIFF'S REQUESTED RELIEF IS OUTSIDE THE SCOPE OF THE APA

Plaintiff's Proposed Order requests that the Court order Defendants to "register the

Copyright in the artwork entitled 'A Recent Entrance to Paradise,' as applied for by Stephen

Thaler." Dkt. 16-1.  Such relief, however, is outside the scope of the APA.  *See Coach, Inc. v.

Peters*, 386 F. Supp. 2d 495, 498 (S.D.N.Y. 2005) ("plaintiffs have citied no authority, and the

Court is aware of none, that would allow this Court, on a review under the APA, to order [the

Copyright Office] to register the works.") (citing *Atari Games Corp. v. Oman*, 979 F.2d 242, 247

(D.C. Cir. 1992) (remanding to "the district court with instructions to again return the matter of

Atari's application to the Register for renewed consideration")).

---

[22] This is an area of congressional interest as well.  Congress recently solicited the
Office's input on forming a national commission on AI.  *See* Letter from Senators Thom Tillis
and Chris Coons to Kathi Vidal, Under Secretary of Commerce for Intellectual Property and
Director of the U.S. Patent and Trademark Office, and Shira Perlmutter, Register of Copyrights
and Director of the U.S. Copyright Office (Oct. 27, 2022),
https://www.copyright.gov/laws/hearings/Letter-to-USPTO-USCO-on-National-Commission-on-
AI-1.pdf.

As detailed above, the refusal to register the Work, the agency action at issue, is a discretionary act and was lawfully done, in accordance with the Office's policies and procedures. And, even if the Court were to find that the Office abused its discretion, which it did not, the remedy would not be an order compelling registration, but rather "renewed consideration" of the copyrightability of the Work.  *Atari Games Corp.*, 979 F.2d at 247.

## CONCLUSION

The Administrative Record shows that the Office's refusal to register the Work was soundly and rationally based on settled law, and not arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.  For the reasons stated above, Defendants respectfully request that the Court deny Plaintiff's Motion for Summary Judgment and grant Defendants' Cross-Motion for Summary Judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:  /s/ Jenna Munnelly
SCOTT BOLDEN  JENNA MUNNELLY
Deputy Director  Trial Attorney
 Civil Division
 U.S. Dept. of Justice
 Washington, DC 20530
 Tel: (202) 616-1061
 E-mail:  jenna.e.munnelly@usdoj.gov

*Counsel for Defendants*

SUZANNE V. WILSON
General Counsel and
Associate Register of Copyrights

27

MARK T. GRAY
Assistant General Counsel

JOHN R. RILEY
Assistant General Counsel

HEATHER L. WALTERS
Attorney

U.S. COPYRIGHT OFFICE


Dated:  February 7, 2023