# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WASHINGTON D.C.

| | |
|---|---|
| STEPHEN THALER, an individual,<br><br>     Plaintiff,<br><br>  v.<br><br>SHIRA PERLMUTTER, in her official capacity as Register of Copyrights and Director of the United States Copyright Office; and THE UNITED STATES COPYRIGHT OFFICE,<br><br>     Defendants. | 1:22-CV-01564-BAH |

**DEFENDANTS' REPLY IN SUPPORT THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................. 1

I.     THE COPYRIGHT OFFICE CORRECTLY REFUSED PLAINTIFF'S COPYRIGHT
      APPLICATION FOR LACK OF HUMAN AUTHORSHIP ............................................ 1

      A.    Copyright Protection Requires Human Authorship ................................................ 2

      B.    Plaintiff's Ownership Arguments are Inapplicable to Copyright .......................... 6

II.    PLAINTIFF'S POLICY ARGUMENTS REGARDING THE COPYRIGHT ACT
      ARE IRRELEVANT AND WRONG ............................................................................... 8

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases:**

*Agape Church, Inc. v. F.C.C.*,
   738 F.3d 397 (D.C. Cir. 2013) ............................................................................ 9

*Bleistein v. Donaldson Lithographing Co.*,
   188 U.S. 239 (1903) ............................................................................................ 2

*Burrow-Giles Lithographic Co. v. Sarony*,
   111 U.S. 53 (1884) ............................................................................................ 2

*Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.*,
   836 F.2d 599 (D.C. Cir. 1988) ............................................................................ 9

*Chevron U.S.A. Inc. v. NRDC*,
   467 U.S. 837 (1984) ............................................................................................ 9

*Community for Creative Non-Violence v. Reid*,
   490 U.S. 730 (1989) ............................................................................................ 7

*Comput. Assocs. Int'l v. Altai*,
   982 F.2d 693 (2d Cir. 1992) ............................................................................... 8

*Custom Chrome, Inc. v. Ringer*,
   No. Civ. A. 93-2634(GK), 1995 WL 405690 (D.D.C. June 30, 1995) ................... 9

*Estate of Cowart v. Nicklos Drilling Co.*,
   505 U.S. 469 (1992) ............................................................................................ 6

*Goldstein v. California*,
   412 U.S. 546 (1973) ............................................................................................ 2

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   739 F.3d 446 (9th Cir. 2014) ............................................................................ 10

*In re Trade-Mark Cases*,
   100 U.S. 82 (1879) ............................................................................................ 2

*Kelley v. Chicago Park Dist.*,
   635 F.3d 290 (7th Cir. 2011) ......................................................................... 4, 5

*Malone v. Saxony Coop. Apartments, Inc.*,
   763 A.2d 725 (D.C. 2000) ................................................................................ 3

*Marascalco v. Fantasy, Inc.*,
953 F.2d 469 (9th Cir. 1991) ........................................................................ 10

*Marvel Characters, Inc. v. Kirby*,
726 F.3d 119 (2d Cir. 2013) ........................................................................ 3

*Mazer v. Stein*,
347 U.S. 201 (1954) ...................................................................................... 2

*Naruto v. Slater*,
888 F.3d 418 (9th Cir. 2018) ..................................................................... 4, 6

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
545 U.S. 967 (2005) ...................................................................................... 8

*OddzOn Prods. v. Oman*,
924 F.2d 346 (D.C. Cir. 1991) ................................................................... 9, 10

*Relf v. Mathews*,
403 F. Supp. 1235 (D.D.C. 1975) .................................................................. 3

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984) ................................................................................... 7, 8

*Urantia Found. v. Kristen Maaherra*,
114 F.3d 955 (9th Cir. 1997) ..................................................................... 5, 6

*Warren v. Fox Fam. Worldwide, Inc.*,
328 F.3d 1136 (9th Cir. 2003) ...................................................................... 3

**Statutes:**

5 U.S.C. § 706 ............................................................................................... 9

17 U.S.C. § 101 .......................................................................................... 4, 10

17 U.S.C. § 201 .......................................................................................... 3, 4

17 U.S.C. § 204 ............................................................................................. 7

17 U.S.C. § 302 ............................................................................................. 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WASHINGTON D.C.**

| | |
|---|---|
| STEPHEN THALER, an individual, | 1:22-CV-01564-BAH |
| Plaintiff, | |
| v. | |
| SHIRA PERLMUTTER, in her official capacity as Register of Copyrights and Director of the United States Copyright Office; and THE UNITED STATES COPYRIGHT OFFICE, | DEFENDANTS' REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT |
| Defendants. | |

## INTRODUCTION

Nothing in Plaintiff's Opposition and Reply makes the Copyright Office's reasoned rejection of the application to register a work alleged to be autonomously created by artificial intelligence (AI) arbitrary or capricious.  Rather than meaningfully engaging with the facts, established law, or relevant standard under the APA, Plaintiff merely repeats policy arguments that AI-generated works deserve copyright protection.  The Court should decline Plaintiff's invitation to reverse the Copyright Office's decision to refuse registration of an AI-generated work.  Plaintiff provides no basis to support either rejection of the longstanding human authorship requirement for copyright protection or creation of an exception for AI-generated works.

## I.     THE COPYRIGHT OFFICE CORRECTLY REFUSED PLAINTIFF'S COPYRIGHT APPLICATION FOR LACK OF HUMAN AUTHORSHIP

Plaintiff's argument is based on a misreading of the Copyright Act (the Act) and the relevant caselaw regarding human authorship.  As discussed in Defendants' Cross-Motion, both the Act and the relevant caselaw support the Copyright Office's position.

1

A.       **Copyright Protection Requires Human Authorship**

First, as discussed in Defendants' Cross-Motion, the Supreme Court has consistently referred to a human person when discussing the term "author" as used in the Copyright Clause of the Constitution and in copyright statutes.  *See* Dkt. 17 at 10, 16 (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 58 (1884); *Mazer v. Stein*, 347 U.S. 201, 214 (1954); *Goldstein v. California*, 412 U.S. 546, 561 (1973)); *see also Bleistein v. Donaldson Lithographing Co.*, 188 U.S. 239, 250 (1903) (describing a copyrightable work as "the personal reaction of an individual upon nature," and describing copyright as protecting the unique, singular "personality" of an individual's work).  This follows from the Supreme Court's holdings that copyright protects only "the fruits of intellectual labor" that "are founded in the creative powers of the mind" and is limited to "original intellectual conceptions of the author."  *See* Dkt. 17 at 14 (quoting *In re Trade-Mark Cases*, 100 U.S. 82, 94 (1879); *Sarony*, 111 U.S. at 58).

Second, Plaintiff's repeated assertions that the current Act allows for "non-human authorship" are incorrect and unsupported in the statutory text.  Defendants addressed this argument in their Cross-Motion, *see* Dkt. 17 at 13-14 (discussing text, structure, and history of statutory provisions regarding authorship); *see, e.g.*, 17 U.S.C. § 302(a) (term of copyright protection endures for "a term consisting of the life of the author and 70 years after the author's death"); § 302(b) (for joint works, term consists of "life of the last surviving author" plus 70 years), and Plaintiff's Opposition and Reply does not and cannot show otherwise.  The case-law relied upon by Plaintiff fails to support Plaintiff's contention that person "is used in its broadest sense to include non-human entities."  Dkt. 18 at 2-3.  In both *Warren v. Fox Fam. Worldwide, Inc.* and *Marvel Characters, Inc. v. Kirby*, the case-law cited by Plaintiff, *see* Dkt. 18 at 3, the courts were addressing written agreements between employers and employees and not the

2

definition of the term "person."  *See Warren v. Fox Fam. Worldwide, Inc*., 328 F.3d 1136, 1140-41 (9th Cir. 2003); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 143 (2d Cir. 2013).

The only statutory language Plaintiff points to in support of his position is the works made for hire provision, 17 U.S.C. § 201(b).  *See* Dkt. 18 at 2-4.  Plaintiff seems to reason that the use of "author" in this provision (which refers to a transfer of ownership rights to an employer or other party) somehow opens the floodgates to copyright protection for all variety of non-human authorship.  *See* Dkt. 18 at 7-10.  However, a review of section 201(b) reveals that Plaintiff's argument misconstrues the meaning of a work made for hire.  Section 201(b) provides that:

> in the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

This provision only states that the employer or "other person" who commissioned the work is *considered* to be the author for the purpose of the Act, it does not contemplate that any non-human is the literal author of the work.  *See* § 201(b).  Indeed, the provision presupposes that the creator of a work made for hire is human.  *Id.*  The statute enumerates two ways that a person or employer can gain authorship of a copyrighted work.  The parties can either contract for a transfer of rights (for eligible types of works), or the work made for hire may arise out of an employment relationship.  *Id.*  Neither option is applicable to Plaintiff's AI.  With regard to the former, the statute requires that the parties expressly agree and memorialize their agreement in a signed written instrument.  *Id.*  Plaintiff's "Creativity Machine" lacks the capacity to enter into a valid contract.  *See, e.g.*, *Malone v. Saxony Coop. Apartments, Inc.*, 763 A.2d 725, 729 (D.C. 2000) (there must be a meeting of the minds on all essential terms for a contract to be valid); *Relf v. Mathews*, 403 F. Supp. 1235, 1238 (D.D.C. 1975) (individual entering into a contract "must

3

have the legal and mental capacity to decide what is truly in his or her own interest"). With regard to the latter, a work made for hire in an employment relationship must have been created by an employee "within the scope of his or her employment." § 201(b). Defendants' Cross-Motion discusses the many reasons that the "Creativity Machine" cannot plausibly be Plaintiff's employee or agent. *See* Dkt. 17 at 22-23.

In other words, regardless of who ultimately owns the copyrighted work (and regardless of whether we refer to these people or entities as owners or "authors"), the works made for hire provision is based on the understanding that the copyrightable work was originally created by a human. *See* § 201(b). Like the remainder of the Act, the works made for hire provision undermines Plaintiff's claim that the Court can disregard the human authorship requirement. Plaintiff does not – and cannot – explain why the corporate acquisition of rights in a copyrighted work is equivalent to non-human creation of such a work. And, Plaintiff seems to acknowledge that the normal rule, in all other contexts, is that the creator of a work is considered its author. *See* Dkt. 17 at 4 (characterizing the works for hire provision as a "carve out").[1]

Third, Plaintiff misconstrues the case-law on human authorship. AI is an emerging technology, and neither Plaintiff nor Defendants are aware of cases specifically addressing whether AI can be considered an author under the Act. Appellate Courts have, however, considered analogous cases regarding works created by animals, nature, and other non-humans. *See* Dkt. 18 at 5-6 (citing *Kelley v. Chicago Park District*, 635 F.3d 290 (7th Cir. 2011) (involving "a living garden"), *Naruto v. Slater*, 888 F.3d 418 (9th Cir. 2018) (involving

---

[1] Plaintiff's brief mention of the provisions regarding anonymous and pseudonymous works also does not support his claim that the Act contemplates non-human authors. *See* Dkt. 18 at 2. Anonymous and pseudonymous works have human authors; they are simply not identified on the copies of the works. *See* 17 U.S.C. § 101; *see also* Dkt. 17 at 13-14.

photographs taken by a monkey), and *Urantia Foundation v. Kristen Maaherra*, 114 F.3d 955

(9th Cir. 1997) (involving a book "authored by celestial beings")).  These decisions employ

reasoning that applies squarely to this case and have uniformly rejected non-human authorship of

copyrighted works.  *See id.*

Efforts by Plaintiff to avoid the holdings in those cases are superficial at best.  Plaintiff

urges this Court to ignore any case-law that addressed multiple copyright issues—as if reaching

more than one question could somehow dilute or nullify a court's opinion as to authorship.  *See*

Dkt. 18 at 5-6.  For example, Plaintiff's main quarrel with *Kelley* – the case involving a living

garden – is that the Seventh Circuit's holding involved both authorship and fixation issues.[2]  *Id.*

at 6.  Regardless of the other issues at stake, *Kelley* unambiguously addressed the type of human

involvement required for copyright protection.  *See Kelley*, 635 F.3d at 303 ("[A] living garden

lacks the kind of authorship and stable fixation normally required to support copyright" and

"authorship and fixation are *explicit* constitutional requirements").  Even Plaintiff concedes that

"the *Kelley* court stated that authors are human."  Dkt. 18 at 6.

Similarly, in trying to discount *Naruto* – the case regarding photographs taken by a

monkey – Plaintiff notes that the case was decided on standing grounds.[3]  *See* Dkt. 18 at 6.

Plaintiff fails to explain why this observation makes the case any less relevant.  In *Naruto*, the

---

[2] Plaintiff also attempts to distinguish *Kelly* because the case involved a portion of the
Act amended by the Visual Artists Rights Act of 1990 (VARA).  *See* Dkt. 18 at 6.  This fact,
however, is irrelevant because VARA did not remove the authorship requirement or other basic
copyrightability standards.  *Kelley*, 635 F.3d 299 (VARA "supplements general copyright
protection; to qualify for moral rights under VARA, a work must first satisfy basic copyright
standards").

[3] To the extent Plaintiff suggests that Defendants' citation to this case was misleading,
Defendants' Cross-Motion informed the Court in several places that the Ninth Circuit decided
the case based on a lack of standing.  *See* Dkt. 17 at 16, 17.

court's analysis of the monkey's standing to bring a copyright claim was based on its status as a non-human.  In determining that only a human has standing under the Act, the court examined statutory provisions involving the term "author" and concluded that they "all imply humanity." *Naruto*, 888 F.3d at 426.  Indeed, if the term "author" implies humanity in a standing context, it must also imply humanity when used in the context of copyrightability.   Plaintiff recognizes as much – acknowledging that identical terms within the same statute bear the same meaning.  *See* Dkt. 18 at 9 (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 478 (1992)).

Finally, Plaintiff's characterization of *Urantia* is just simply incorrect.  Although the court in *Urantia* noted the scholarly debate over whether computer-generated works are copyrightable, it did not, as Plaintiff claims, go "out of its way to clarify that its holding did not apply to AI-generated works."  Dkt. 18 at 5.  To the contrary, the court explicitly affirmed that there is a "human creativity" requirement for copyrightability.  *Urantia Found.*, 114 F.3d at 958.

### B.     Plaintiff's Ownership Arguments are Inapplicable to Copyright

The Court should find that the Copyright Office's decision was not arbitrary or capricious based solely on the arguments above.  However, even if Plaintiff were correct that a non-human could create a copyright work—a conclusion not supported by any statute or court opinion— Plaintiff has failed to demonstrate that he is the proper claimant to register the copyright. Plaintiff's Opposition and Reply repeats flawed arguments about the works made for hire doctrine.  The premise of Plaintiff's argument is that he is equivalent to an employer of the "Creativity Machine."  *See* Dkt. 18 at 9-10.  But, Plaintiff's programming, direction, and use of the AI, do not magically anthropomorphize the machine into an employee.  Plaintiff cites no cases or other support for the proposition that a computer has ever been treated as an employee under copyright law or common-law agency principles.  *Id.* at 8-9.  Further, Plaintiff concedes

that several of the factors the Supreme Court has used to determine whether someone is an employee cannot apply to a machine.  *See id*. at 9; *see also* Dkt. 17 at 22-23 (discussing factors laid out in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989)).

Plaintiff's other argument, that rights in the Work were transferred to him, is equally unavailing.  *See* Dkt. 18 at 10-11 (referencing Dkt. 16 at 20-24).  Ownership of a copyright is generally transferred through a signed written agreement.  *See* 17 U.S.C. § 204(a).  Perhaps because Plaintiff and the "Creativity Machine" could not enter into such an agreement, *see* Section I.A *supra*, Plaintiff claims that he gained copyright ownership "by operation of law" under common-law property principles.  Dkt. 18 at 11; *see also* § 204(a).  Plaintiff recognizes (Dkt. 16 at 20) that the transfer of copyright by operation of law typically involves circumstances such as intestate succession, where it is impossible for the deceased to sign a written agreement, or distribution of copyrights from a dissolving corporation, where other documents related to the transaction demonstrate the intended transfer.  In an attempt to fit the facts here within this framework, Plaintiff points to common-law principles that relate to physical property.  *See, e.g.*, Dkt. 16 at 20-24 (referencing "fruit of the tree" and right of first possession).  Unsurprisingly, Plaintiff cites no case in which these principles have been applied to a transfer of copyright ownership.[4]  Plaintiff also fails to explain why common law property principles would not be preempted by the Act.  *See* Dkt. 17 at 21, n.15.

_____

[4] One of the many reasons that the law treats physical and intellectual property differently relates to concerns surrounding not only ownership but lack of ownership.  Clarifying ownership in real property is important not just to avoid disputes, but also to establish who is responsible for caring for the property.  By contrast, unowned expressive works reside in the public domain. *See, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984).

## II.    PLAINTIFF'S POLICY ARGUMENTS REGARDING THE COPYRIGHT ACT ARE IRRELEVANT AND WRONG

Unable to harmonize this case with statute or precedent, Plaintiff resorts to diverting the Court's attention to incorrect arguments about copyright policy and the purpose of the Act. *See, e.g.*, Dkt. 18 at 1, 13 (suggesting that "this is perhaps *the* paradigmatic case . . . requiring purposive statutory interpretation"). Plaintiff asserts without support that any ambiguity as to the protectability of AI-created works should be resolved in light of the purpose of the statute, at least as Plaintiff sees it. *See id.* But any ambiguity in the statute would make it exceedingly difficult for Plaintiff to demonstrate that the Copyright Office's human authorship requirement is arbitrary. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 985 (2005) ("Before a judicial construction of a statute . . . may trump an agency's, the court must hold that the statute unambiguously requires the court's construction.").

As an initial matter, Plaintiff's understanding of the Act's purpose is incomplete. Plaintiff focuses narrowly on the creation of works and disclaims the importance of economic incentives for human creators. *See* Dkt. 18 at 13-14. Courts have recognized that the copyright system seeks a balance of the economic incentives for creators and the dissemination of works for the public good. *See, e.g., Sony*, 464 U.S. at 429 (exclusive right in intellectual property involves "a difficult balance between the interests of authors and inventors in the control and exploitation of their writings and discoveries on the one hand, and society's competing interest in the free flow of ideas, information, and commerce on the other hand"); *Comput. Assocs. Int'l v. Altai*, 982 F.2d 693, 696 (2d Cir. 1992) (copyright law establishes a "delicate equilibrium" between incentivizing authors to create and avoiding "monopolistic stagnation"); *see also* Dkt. 17 at 35.

Even more significantly, Plaintiff's claim that the Copyright Office's conclusion here deserves *no* deference (beyond its own regulations) is contrary to the applicable standard of review and to the routine practice of Appellate Courts, including the D.C. Circuit, when considering copyright issues.  The APA's directive that agency action may be overturned only when "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" – not Plaintiff's incorrect contention that any ambiguity must be resolved in his favor – must guide this case.[5]  5 U.S.C. § 706; *see also, e.g., OddzOn Prods., Inc. v. Oman*, 924 F.2d 346, 349-50 (D.C. Cir. 1991) (Ginsburg, J.) (reserving consideration of the question of the best way to interpret a provision of the Copyright Act for a case that was not an APA claim regarding refusal of registration, and limiting its inquiry to determining whether the Copyright Office acted arbitrarily); *see also Custom Chrome, Inc. v. Ringer*, No. CIV. A. 93–2634(GK), 1995 WL 405690, *6 (D.D.C. June 30, 1995) (stating that a plaintiff's request for the court to interpret a section of the Copyright Act "clearly misconceived the function of this court" in the context of an APA claim regarding a registration refusal).  Here, the Copyright Office's decision was not arbitrary or capricious.  It was a well-reasoned decision based on the text of the Constitution and the Act, as well as Supreme Court and appellate decisions that uniformly support a human authorship requirement.

More broadly, courts routinely defer to the Copyright Office's experience and expertise related to the interpretation and application of the Act.  *See, e.g., Cablevision Sys. Dev. Co. v. Motion Picture Ass'n of Am., Inc.,* 836 F.2d 599, 609-10 (D.C. Cir. 1988) (giving deference to

---

[5] The Copyright Office's human authorship requirement also satisfies the somewhat stricter *Chevron* standard, which obliges a court, ordinarily, to leave undisturbed a reasonable agency interpretation of a statute if Congress has not directly addressed the issue presented.  *See Agape Church, Inc. v. F.C.C.*, 738 F.3d 397, 408 (D.C. Cir. 2013) (citing *Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837 (1984)).

the Copyright Office's interpretation of language in Section 111 of the Copyright Act); *see also*

*Inhale, Inc. v. Starbuzz Tobacco, Inc.,* 739 F.3d 446, 449 (9th Cir. 2014) (finding Copyright

Office opinion letter and Compendium interpreting language in section 101 of Copyright Act

persuasive); *Marascalco v. Fantasy, Inc*., 953 F.2d 469, 473 (9th Cir. 1991) (giving deference to

Copyright Office's interpretation of section 304 of the Copyright Act).  Courts have highlighted

the specific importance of deference in the context of registration decisions, in light of the

Copyright Office's expertise.  Dkt. 17 at 12; *see also OddzOn*, 924 F.2d 346 at 348, 350.

## CONCLUSION

For the reasons discussed above, the Office's refusal to register the Work was soundly

and rationally based on settled law, and was not arbitrary or capricious, or an abuse of discretion.

Defendants therefore respectfully request that the Court grant Defendants' Cross-Motion for

Summary Judgment.[6]

---

[6] Plaintiff failed to respond to Defendants' argument that the Court does not have the authority to order the Copyright Office to register the Work.  *See* Dkt. 17 at 26-27.  If the Court were to grant Plaintiff's Motion for Summary Judgment, Plaintiff has conceded that the appropriate remedy would be renewed consideration of the copyrightability of the Work.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

Of Counsel:
SCOTT BOLDEN
Deputy Director

GARY L. HAUSKEN
Director

/s/ Jenna Munnelly
JENNA MUNNELLY
Trial Attorney
Civil Division
U.S. Dept. of Justice
Washington, DC 20530
Tel: (202) 616-1061
E-mail:  jenna.e.munnelly@usdoj.gov

SUZANNE V. WILSON
General Counsel and
Associate Register of Copyrights

EMILY CHAPUIS
Deputy General Counsel

MARK T. GRAY
Assistant General Counsel

*Counsel for Defendants*

JOHN R. RILEY
Assistant General Counsel

JORDANA RUBEL
Assistant General Counsel

HEATHER L. WALTERS
Attorney

U.S. COPYRIGHT OFFICE

Dated:  April 4, 2023